1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     HUMBERTO DIAZ,                                    No.  2:12-cv-1095 WBS AC

12                        Petitioner,

13          v.                                           FINDINGS AND RECOMMENDATIONS

14     G. D. LEWIS,

15                        Respondent.

16

17          Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18     habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the amended petition filed

19     July 19, 2013, ECF No. 31, which challenges petitioner's 2007 conviction for three counts of

20     attempted murder with firearm and gang enhancements.  Respondent has answered, ECF No. 38,

21     and petitioner has filed a traverse, ECF No. 41.

22                                            BACKGROUND

23          Trial Court Proceedings

24          Petitioner and his co-defendant, Jamual Broadbent, were charged in Sacramento County

25     with three counts of attempted murder arising from a 2006 gang-related shooting.  Broadbent was

26     alleged to be the shooter, and petitioner was tried on an aiding and abetting theory.  The evidence

27     at trial established the following facts:

28          On January 13, 2006, teenager Dorrate Hicks and his friend Michael Jordan were walking

                                                    1

1  down the street in the Oak Park neighborhood of Sacramento, and passed a group of men that

2  included petitioner and Broadbent.  Jordan recognized petitioner and shook his hand.  As Jordan

3  and Hicks walked away, another man asked where Hicks and Jordan were from.  Jordan replied

4  that he was from Los Angeles, but did not "gang-bang."  Someone in petitioner's group said "Oak

5  Park is mine," which Hicks understood as a territorial claim.  Someone said "fuck L.A.," and

6  someone else told Hicks and Jordan to get out of the area.  Jordan replied that they were not

7  looking for trouble, and he and Hicks walked off.

8        Hicks and Jordan walked to nearby Christian Brothers High School, where Hicks called

9  his brother, Tykemo Harrison, and asked to be picked up.  Hicks told Harrison that some guys

10  had tried to "punk him."  Harrison drove to Christian Brothers with Dorral Hicks (another

11  brother), Anthony Watkins, and Javan Gant.  When the men arrived, Harrison asked the location

12  of the men who had been "messing with" his little brother.  Dorrate Hicks got into the car and

13  directed the men to the intersection where petitioner and his companions remained.  (Jordan had

14  left the scene by the time Harrison arrived.)  There were as many as eight men standing around

15  the intersection.  Harrison parked in the middle of the street and got out of the car, leaving the

16  engine running.  The four occupants also got out of the car.

17        According to Dorrate Hicks, Harrison said something like, "my brother just told me one

18  [of you] all from down here was messing with him."  A man later identified as petitioner replied,

19  "Your little brother don't supposed to be over here," and "This is Oak Park Bloods.  We don't

20  know who your brother is."  Dorral Hicks recognized petitioner as someone he had seen before.

21  The two shook hands and petitioner said, "[E]verything cool."  At some point during these

22  exchanges, petitioner turned and said something to two of his associates.  Id.  In response, the two

23  men walked from one corner to another and around the back of a house.

24        Dorral Hicks and Harrison both testified that when petitioner spoke to the two men who

25  walked away from the group, he said something like "go get a gun" or "go get the gun."  When

26  the two men returned to the intersection shortly thereafter, Gant said "they was on point and let's

27  get out of here."  Harrison, Gant and the Hicks brothers got back in Harrison's car as the two men

28  from petitioner's group, one of whom was later identified as Broadbent, approached the vehicle.

2

Dorral Hicks told Broadbent that everything was cool and they were just leaving.  As Watson was getting into the car to join the others, Broadbent started shooting.  The windows on the passenger side shattered.  Watson was shot in the head.  Dorral Hicks was shot in the wrist and in the arm. The bullet that entered Hicks' arm traveled through his chest and lodged in his neck.  Harrison was shot in the shoulder.  Although none of the wounds were fatal, Watson was left in a vegetative state.

Sacramento Police Detective Wendy Brown was working in the gang suppression unit at the time of the shooting.  She arrested Broadbent and was present at petitioner's arrest two days later.  When he was arrested, petitioner had rock cocaine in a plastic baggie on his person.  Det. Brown testified as the prosecution's gang expert.  She told the jury that petitioner and Broadbent were both validated members of "Ridezilla," a subset of the Oak Park Bloods.  Petitioner had been validated in 2005, in part on the basis of his admissions of gang membership.  Petitioner had Ridezilla tattoos on both forearms.  Det. Brown testified that Ridezilla is a "very, very violent gang" and its primary activities are "[h]omicides, attempt[ed] homicides, narcotics dealings, [and] assaults with deadly weapons."  She stated that, "The rivals of Ridezilla are anyone who challenges Ridezilla."  She described Ridezilla members as "very, very often armed, and. . . not afraid to use them."  Det. Brown expressed her opinion that the shooting was committed for the benefit of Ridezilla because "the gang . . . benefits by a show of force in answering disrespect."

On September 17, 2007, the jury found petitioner and Broadbent guilty on all charges and found true all the enhancement allegations.  CT 548-50; RT 1338-45.[1]  On December 14, 2007, the trial court sentenced petitioner to an aggregate term of 18 years four months plus 50 years to life in prison.  CT 17; RT 1410.

Post-conviction Proceedings

Petitioner appealed, and the California Court of Appeal affirmed the judgment on October

////

////

---

[1]  "CT" refers to the Clerk's Transcript on Appeal.  "RT" refers to the Reporters Transcript on Appeal.

1    29, 2009.  Lodged Doc. 7.[2]  The California Supreme Court summarily denied review on February

2    10, 2010.  Lodged Doc. 10.

3        On November 3, 2010, petitioner filed a pro se petition for writ of habeas corpus in the

4    Sacramento County Superior Court.  Lodged Doc. 1.  The petition was denied on January 10,

5    2011.  Lodged Doc. 12.  On April 11, 2011, petitioner filed a petition for writ of habeas corpus in

6    the Court of Appeal.  Lodged Doc. 13.  That petition was denied on April 21, 2011.  Lodged Doc.

7    14.  On June 6, 2011, petitioner filed a petition for writ of habeas corpus in the California

8    Supreme Court.  Lodged Doc. 15.  That petition was denied on March 14, 2012.  Lodged Doc. 16.

9        On March 30, 2012, petitioner filed a habeas petition in this court.  ECF No. 1.

10   Respondent moved to dismiss the petition as "mixed" -- that is, containing both exhausted and

11   unexhausted claims.  ECF No. 12.  Petitioner moved for stay and abeyance of the mixed petition.

12   ECF No. 17.  In Findings and Recommendations filed on May 15, 2013, the undersigned found

13   that Claims One, Three, Four, and part of Claim Two were exhausted, and that Claims Six

14   through Eight the remainder of Claim Two were unexhausted.  ECF No. 25 at 9-10.  The

15   undersigned recommended that the motion for stay and abeyance be denied because petitioner

16   had not demonstrated good cause under Rhines v. Weber, 544 U.S. 269 (2005).  Id. at 13, 15.  It

17   was further recommended that the motion to dismiss be granted in part, and that petitioner be

18   offered the choice between (1) amending the petition to delete unexhausted claims, and

19   proceeding on the exhausted claims only, (2) accepting dismissal without prejudice of the mixed

20   petition pending further exhaustion, or (3) amending the petition to delete unexhausted claims,

21   and seeking a stay under Kelly v. Small, 315 F.3d 1063 (9th Cir. 2002).  Id. at 14-16.  The district

22   judge adopted the Findings and Recommendations on June 19, 2013.  ECF No. 27.

23        On June 27, 2013, petitioner filed an interlocutory appeal.  ECF No. 28.  On July 19,

24   2013, he filed an amended petition.  ECF No. 31.  On October 28, 2013, petitioner's appeal was

25   dismissed for lack of jurisdiction.  ECF No. 42.

26        Respondent's answer was filed on September 17, 2013, and petitioner's traverse on

27

28  

---

[2]  All citations to the state court record refer to respondent's second lodging, dated September 17, 2013.  See ECF No. 37.

1    October 18, 2013.

2              STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

3          28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

4    1996 ("AEDPA"), provides in relevant part as follows:

5                  (d) An application for a writ of habeas corpus on behalf of a person
                   in custody pursuant to the judgment of a state court shall not be
6                  granted with respect to any claim that was adjudicated on the merits
                   in State court proceedings unless the adjudication of the claim –
7
                   (1) resulted in a decision that was contrary to, or involved an
8                  unreasonable application of, clearly established Federal law, as
                   determined by the Supreme Court of the United States; or
9
                   (2) resulted in a decision that was based on an unreasonable
10                 determination of the facts in light of the evidence presented in the
                   State court proceeding.
11

12         The statute applies whenever the state court has denied a federal claim on its merits,

13   whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct. 770, 785

14   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

15   absent any indication or state-law procedural principles to the contrary.  Id. at 784-785 (citing

16   Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

17   unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

18   "The presumption may be overcome when there is reason to think some other explanation for the

19   state court's decision is more likely."  Id. at 785.

20         The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

21   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

22   U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and

23   standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002)

24   (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent

25   may constitute "clearly established Federal law," but circuit law has persuasive value regarding

26   what law is "clearly established" and what constitutes "unreasonable application" of that law.

27   Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044,

28   1057 (9th Cir. 2004).

                                              5

1    A state court decision is "contrary to" clearly established federal law if the decision

2    "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529

3    U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state

4    court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

5    the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court

6    was incorrect in the view of the federal habeas court; the state court decision must be objectively

7    unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

8    Review under § 2254(d) is limited to the record that was before the state court. Cullen v.

9    Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court

10   reasonably applied clearly established federal law to the facts before it. Id. In other words, the

11   focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the

12   state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

13   state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th

14   Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily,

15   without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court

16   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

17   determine what arguments or theories may have supported the state court's decision, and subject

18   those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

19   Relief is also available under AEDPA where the state court predicated its adjudication of

20   a claim on an unreasonable factual determination. Miller-El v. Dretke, 545 U.S. 231, 240 (2005);

21   Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). The

22   statute explicitly limits this inquiry to the evidence that was before the state court. 28 U.S.C. §

23   2254(d)(2).

24   To prevail in federal habeas proceedings, a petitioner must establish the applicability of

25   one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional

26   invalidity of his custody under pre-AEDPA standards. Frantz v. Hazey, 533 F.3d 724. There is

27   no single prescribed order in which these two inquiries must be conducted. Id. at 736-37. The

28   AEDPA does not require the federal habeas court to adopt any one methodology. Lockyer v.

6

1    *Andrade*, 538 U.S. at 71.

2                                              DISCUSSION

3        I.        Claim One: Ineffective Assistance of Trial Counsel

4            A.    Petitioner's Allegations

5            Petitioner contends that he was denied his right to the effective assistance of counsel when

6    his attorney "went against petitioner's theory of the case" and effectively conceded his guilt by

7    stating during closing argument that petitioner had said "Get a gun."[3]

8            Petitioner's liability was based on aiding and abetting.  Prosecution witnesses testified that

9    petitioner told one of his confederates to "go get a gun" during the confrontation that immediately

10   preceded the shooting.  Petitioner and his counsel had agreed pretrial on the importance of

11   disputing that evidence.  Petitioner specifically told counsel that he had *not* said "Get a gun."

12   During closing argument, however, counsel told the jury that "the only reason why Mr. Diaz said

13   get a gun" was to make Tykemo Harrison back off.  Counsel argued that petitioner was unarmed

14   and in fear for his life, so he said "the only thing he [could] think of that might keep him from

15   getting shot."  ECF No. 31 at 40 (Pet. Ex. A) (RT 1238).

16           She elaborated as follows:

17                 Mr. Diaz' attempts at cooling everything down and his friendliness
18                 out there proves that he had [no] criminal intent.

19                 He didn't pull out a gun.  He didn't shoot people.  He didn't tell
                   anybody to shoot people.  That's not what he wanted to happen.
20                 That's not what he intended to happen that night at all.

21                 And if this was some secret plan that Mr. Diaz cooked up in a
                   fraction of a second in order to set these people up so they could be
22                 assaulted or shot, why say get a gun out loud?  Why say get a gun
                   out loud?

23

24   [3]  Petitioner's original federal petition, like the petition he filed in Sacramento County Superior
     Court, further alleged that several other aspects of counsel's performance constituted ineffective
25   assistance.  The court previously found those other allegations unexhausted as grounds for relief.
     ECF Nos. 25, 27.  Respondent's answer addresses the additional ineffective assistance subclaims,
26   presumably because unexhausted claims may be denied on the merits.  ECF No. 38 at 23-25
     (discussing allegations and citing 28 U.S.C. § 2254(b)(2)).  These instances of alleged IAC are
27   not asserted as grounds for relief in the operative amended petition, however.  Compare ECF No.
     1 at 10 with ECF No. 31 at 12.  Accordingly, they will not be addressed.
28
                                                    7

1

2

3

> The reason is because he was talking to Tykemo, and he wanted Tykemo to know he meant business, and he was trying to protect himself against maybe getting shot out there in the middle of the street.

4    Id. at 43 (RT 1241).

5         Following petitioner' conviction, trial counsel filed a notice of appeal that specified

6    "points [to] be raised on appeal" including:

7

8

9

> IAC for defense counsel's argument to jury conceding defendant made the alleged statement "Go get the gun" in contravention of defendant's express objection and denial to counsel that he made the statement. . .

10   ECF No. 31 at 49 (Pet. Ex. C).[4]

11        In a post-trial letter to appellate counsel, trial counsel stated as follows:

12

13

14

15

16

17

> Mr. Diaz. . . specifically asked me not to argue that he in fact *said* "get the gun." I did anyway, and realized later that it was a very bad decision on my part. I can't explain why I did that. Except to say that I decided to argue instead that he only trying to scare the 'vicitms' away, and that he wasn't telling Broadbent or anyone else to shoot people, and that he wasn't responsible for the shootings. . . . I have re-argued this case in my mind a million times, and will always regret the way I made my argument. . . . This was a complete mistake on my part, having nothing to do with any tactical decision I made.

18   ECF No. 31 at 53 (Pet. Ex. D).

19        B.   The Clearly Established Federal Law

20        To establish a constitutional violation based on ineffective assistance of counsel, a

21   petitioner must show (1) that counsel's representation fell below an objective standard of

22   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

23   Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

24   adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

25   errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

26   address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

27

28

---

[4]  Citations to court documents refer to the page numbers assigned by the court's electronic docketing system.

1   prong.  Id. at 697.

2     C.  The State Court's Ruling

3      Petitioner's ineffective assistance of counsel ("IAC") claim was exhausted in state habeas.

4   The California Supreme Court denied the petition without comment or citation.  Lodged Doc. 12.

5   Accordingly, this court "looks through" the silent denial to the last reasoned state court decision.

6   See Ylst v. Nunnemaker, 501 U.S. 797 (1991).  Because the superior court issued the only

7   reasoned decision adjudicating the claim, that is the decision reviewed for reasonableness under §

8   2254(d).  See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

9      The superior court ruled in relevant part as follows:

10       Petitioner next claims that trial counsel was ineffective in failing to
proceed with the agreed-upon defense that petitioner never said "go
11       get the gun" and instead admitting in argument that he made the
statement, and that appellate counsel was ineffective in failing to
12       raise the issue on appeal. In support, he attaches a letter trial
counsel wrote to appellate counsel, stating that petitioner had
13       specifically asked trial counsel not to argue that petitioner in fact
said "get the gun," but counsel did anyway and argued instead that
14       petitioner was only trying to scare the victims away and was not
telling codefendant to shoot people, and that this was a complete
15       mistake on counsel's part and had nothing to do with any tactical
decision counsel had made.
16

    The letter also, however, admits that eyewitnesses had heard
17       petitioner to have said "get the gun." As such, even though after the
fact trial counsel stated it was not a tactical decision, it actually was
18       a tactical decision on counsel's one [sic], and a reasonable one at
that, in deciding not to challenge strong testimony that petitioner
19       had in fact made the statement and instead deciding to attempt to
explain away the statement in hopes that the jury would believe that
20       reasoning. That did not constitute ineffective assistance of counsel,
under the circumstances, and was a reasonable gamble that was
21       rejected by the jury. As such, the claim fails and is denied.
(Strickland v. Washington (1984) 466 U.S. 668; [In re] Bower,
22       supra[, 38 Cal.3d 865 (1985)]).

23   Lodged Doc. 12 at 3-4.

24     D.  Objective Reasonableness Under § 2254(d)

25      The superior court's adjudication of petitioner's IAC claim did not unreasonably apply

26   Strickland.  Strickland and progeny require deference to counsel's decisions unless those

27   decisions are outside the wide range of reasonable performance.  See Strickland, 466 U.S. at 689;

28   see also Harrington v. Richter, 131 S. Ct. at 788.  The conduct complained of here – making an

1   argument that was inconsistent with petitioner's preferred strategy, but that gave the jury an

2   exculpatory interpretation of the evidence that had been presented – does not fall outside that

3   wide range.  Contrary to petitioner's argument, counsel did not concede his liability for attempted

4   murder.  The jury had heard two witnesses testify that petitioner had said "Get a gun."[5]

5   Challenging the interpretation of that testimony, rather than its truth, was not an unreasonable

6   response to the state of the evidence.  Because it was not unreasonable of the superior court to

7   apply the deference that <u>Strickland</u> requires under these circumstances, § 2254(d)(1) does not

8   permit relief.

9          To the extent that the superior court's decision rested on a factual finding that trial counsel

10   made a tactical decision, that determination was not unreasonable.[6]  Trial counsel's own post-hoc

11   disavowal of tactical considerations is not dispositive.  It is not unreasonable to characterize as

12   tactical the decision to argue that the "get a gun" statement had an innocent explanation, rather

13   than arguing it had not been made.  This is especially so in light of the fact that two witnesses

14   testified that petitioner had made the statement.  Accordingly, § 2254(d)(2) does not permit relief.

15   II.      <u>Claim Two: Denial of Post-Trial Access to Jurors</u>

16          A.  <u>Petitioner's Allegations</u>

17          Petitioner claims that the trial court abused its discretion, in violation of his rights to due

18   process and an impartial jury, by denying his post-trial motion for juror contact information.

19   After the trial, defense counsel was contacted by a juror who regretted the verdict.  Counsel's

20   declaration in support of the motion stated as follows:

21              1. On or about September 19, 2007, I returned a phone call from
22          juror Joseph Rona and spoke with him at length about his
            perceptions and understanding of the law as it applies to this case.
23          He said he had called me because he wanted to talk about the case
            and the jury's verdicts. He stated that he wished he had not voted in
24          favor of Mr. Diaz's guilt. We spoke quite a while, and some of his
            comments lead me to believe that the jurors may have
25          inappropriately considered and discussed Mr. Diaz's failure to
            testify. Mr. Rona said to me that during the trial, the jury had
26          questions and felt there was a "missing link." He said he did not

27   [5]  RT 464 (testimony of Dorral Hicks); RT 565 (testimony of Tykemo Harrison).
28   [6]  In any case, the dispositive question on a <u>Strickland</u> claim is not whether the decision was
     strategic, but whether it was reasonable.  <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 481 (2000).

1    know if the shooting was intentional (on Mr. Diaz's part) but that
     "he didn't defend himself."

2

3    2. Additionally, Mr. Rona and other jurors may have misunderstood
     some of the instructions on the law. He said that "the procedure for
4    someone to get away from being and aider and abettor, is they have
     to do all within their power to stop what's going on. The law says
5    that if you started it, you must stop it." Mr. Rona said that he
     thought Mr. Diaz was guilty for "being there," but that he does not
6    believe he intended for the shooting to happen.

7    3. Mr. Rona stated that everybody wanted to find Mr. Diaz guilty of
     a lesser crime but that attempted voluntary manslaughter "didn't
8    fit," and so he felt he had no choice but to vote for guilt on the
     attempted murder charge.

9    4. I believe that information provided by Mr. Rona raises a
     possibility of juror misconduct and misapplication of the law as
10   well as an improper placement of the burden of proof on the
     defense in this case.

11

12   ECF No. 31 at 60-161 (Pet. Ex. F); CT 57-58.

13       Petitioner sought juror identifying information pursuant to Cal. Code Civ. P. §§ 206(f) and

14   237(b), in order to investigate possible jury misconduct and misapplication of the law.  Id. at 58-

15   59.  The trial court denied the motion on grounds that (1) counsels' declaration was inadmissible

16   hearsay, (2) even considering the declaration, there was no prima facie showing of good cause to

17   support disclosure, (3) juror safety was a genuine issue in this case, and constituted a compelling

18   interest against disclosure, and (4) the verdict could not be impeached in any case with jurors'

19   testimony about their thought processes.  RT 1367-68.

20       B.  The Clearly Established Federal Law

21       Due process requires that criminal trials "comport with prevailing notions of fundamental

22   fairness."  California v. Trombetta, 467 U.S. 479, 485 (1984).  The constitutional guarantee of a

23   fair trial encompasses the right to an impartial jury.  See Morgan v. Illinois, 504 U.S. 719, 727

24   (1992); Groppi v. Wisconsin, 400 U.S. 505, 508 (1971).  Because a criminal defendant enjoys a

25   constitutional privilege against self-incrimination, a jury may not consider or draw any adverse

26   inferences from a defendant's choice not to testify.  Carter v. Kentucky, 450 U.S. 288, 300 (1981)

27   (constitution requires no-adverse-inference instruction upon request).  When a trial court is

28   presented with credible evidence of jury bias, a new trial is not necessarily required; the trial court

11

1    may conduct a limited hearing consistent with minimum due process requirements.  Smith v.

2    Phillips, 455 U.S. 209 (1982).

3            C.  The State Court's Ruling

4            This claim was exhausted in state habeas.  The superior court denied relief in a reasoned

5    decision, which was presumptively adopted by the California Supreme Court's "postcard denial."

6    See Bonner v. Carey, 425 F.3d at 1148 n.13.  The superior court ruled in relevant part as follows:

> Petitioner first claims that the trial court abused its discretion in improperly denying access to jury information needed to prepare a motion for a new trial, and never determined whether an affidavit supporting the motion was admissible, regarding juror discussion of petitioner's failure to testify and uncertainty regarding petitioner's overall guilt as conveyed to petitioner's trial counsel in a phone conversation.
>
> . . .  In support, petitioner attaches a copy of the motion filed by trial counsel, postverdict, requesting juror identifying information, as well as trial counsel's affidavit detailing a telephone conversation that trial counsel had with the juror. Trial counsel, in the affidavit, attests that the juror told counsel that he wished he had not voted guilty, that during the trial the jury had questions and felt there was a missing link, that the juror did not know if the shooting was intentional and that petitioner did not defend himself, that to get out of aider and abettor liability one must do all within one's power to stop what's going on, that the juror did not believe that petitioner intended for the shooting to happen, and that everybody wanted to find petitioner guilty of a lesser crime but that attempted voluntary manslaughter did not fit so the juror had no choice but to vote for guilt on attempted murder.
>
> Petitioner fails to attach a copy of the reporter's transcript of the October 31, 2007 hearing during which petitioner's motion for disclosure of juror identifying information [sic]. As such, the court cannot now review the court's reasoning, if any was stated, to determine whether that was error. Nor does petitioner state how the ruling was erroneous, nor does he support his position with citation to proper authority. In any event, it appears that the motion was properly denied, as trial counsel did not attach an affidavit from the juror. Only a sworn affidavit or oral testimony from the juror could have established good cause for granting the request for the disclosure (see People v. Hayes (1999) 21 Cal.4th 1211). Nor does petitioner submit a sworn affidavit from the juror to support his claim. Nor does petitioner show that any of the matter attested to in counsel's affidavit presented to the trial court would have been admissible for purposes of a motion for a new trial, pursuant to Evid. Code § 1150(a). For all these reasons, the claim is denied (In re Bower (1985) 38 Cal.3d 865).

Lodged Doc. 12 at 1-2.

1        D.  Objective Reasonableness Under § 2254(d)

2        The superior court did not mention the federal constitutional dimension of petitioner's

3   claim, but this court must presume that it was considered and apply § 2254(d) standards to the

4   implicit rejection of the claim.  Johnson v. Williams, 133 S.Ct. 1088, 1096 (2013).

5        In Sims v. Rowland, 414 F.3d 1148 (9th Cir.), cert. denied, 546 U.S. 1066 (2005), the

6   Ninth Circuit held that § 2254(d) barred relief where a California trial court failed to conduct a

7   hearing regarding possible jury bias.  The Court concluded that the state court could not have

8   unreasonably applied clearly established federal law, because "the Supreme Court has not yet

9   decided whether due process requires a trial court to hold a hearing *sua sponte* whenever evidence

10  of juror bias comes to light."  Sims, 414 F.3d at 1153.  The Supreme Court has also never decided

11  the related question whether, or under what circumstances, due process requires that a criminal

12  defendant be permitted post-trial access to jurors in order to investigate possible bias or

13  misconduct.  Where no Supreme Court precedent directly governs an issue, there can be no

14  unreasonable application of clearly established federal law.  Carey v. Musladin, 549 U.S. 70, 77

15  (2006).  Accordingly, § 2254(d) precludes relief here.

16       Even if the undersigned were to conclude that the constitutional claim had not been

17  adjudicated by the superior court, and therefore were to conduct de novo review, petitioner would

18  not be entitled to relief.  The Supreme Court has held that a hearing is required where there is

19  evidence of jury tampering, Remmer v. United States, 347 U.S. 227 (1954), but the Ninth Circuit

20  has explained that this rule is limited to the tampering context and does not apply to other forms

21  of potential jury misconduct.  Tracey v. Palmateer, 341 F.3d 1037, 1044 (9th Cir.), cert. denied,

22  543 U.S. 864 (2003).  Where there is no constitutional right to a hearing regarding jury issues,

23  there can be no constitutional right to investigate such issues.  Without a constitutional right to

24  investigate juror misconduct, the denial of juror identifying information cannot support federal

25  habeas relief.

26       In deciding whether to hold a hearing or otherwise inquire into possible jury misconduct,

27  due process principles require a court to consider the content and source of the allegations,

28  assesses the seriousness of the issue, and determine whether further inquiry is warranted.  Sims,

13

414 F.3d at 1155.  All that the Fourteenth Amendment categorically forbids is "a trial judge

remaining idle in the face of evidence indicating probable juror bias."  Id. at 1156.

In petitioner's case, the trial judge was not presented with evidence indicating probable

juror bias.  It was presented with a hearsay account of possible juror second-guessing, which is

not the same thing.  The declaration of counsel that was presented to the superior court did not

recount or allege any specific facts that would constitute jury misconduct, or that demonstrated

jurors had impermissibly drawn adverse inferences from petitioner's failure to testify.  Counsel

merely reported her suspicion that this might be so.  Accordingly, even if due process requires

disclosure of juror contact information in the face of evidence that jurors were biased or failed to

follow their instructions, the evidence before the trial judge in this case was insufficient to require

investigation.

Finally, even if the trial judge misapplied the California statute, petitioner would not be

entitled to habeas relief.  See Estele v. McGuire, 502 U.S. 62, 67 (1991) (errors of state law do

not support habeas relief absent a due process violation).  This court may not disturb the decision

of the California court finding no violation of the statute.  Bradshaw v. Richie, 546 U.S. 74, 76

(2005).

For all these reasons, relief is not available on this claim.

III.     Claim Three: Instructional Error

A.  Petitioner's Allegations

Petitioner claims that his rights to due process and a fair trial were violated when the jury

was instructed pursuant to CALCRIM 403, as follows:

> Before you may decide whether the defendant is guilty of attempted
> murder based on the theory that he aided and abetted someone else
> who committed the crime, you must decide whether he is guilty of
> brandishing a firearm or assault with a firearm. The crimes of
> brandishing a firearm and assault with a firearm are defined
> elsewhere in these instructions.
>
> To prove that a defendant is guilty of attempted murder, the People
> must prove that:
>
> 1. The defendant is guilty of brandishing a firearm or assault with a
> firearm;

2. During the commission of the brandishing a firearm or assault with a firearm the crime of attempted murder was committed; and

3. Under all of the circumstances a reasonable person in the defendant's position would have known that the commission of the attempted murder was a natural and probable consequence of the commission of the brandishing of a firearm or assault with a firearm.

A natural and probable consequence is one that a reasonable person knows is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the attempted murder was committed for a reason independent of the common plan to commit the brandishing a firearm or assault with a firearm, then the commission of attempted murder was not a natural and probable consequence of brandishing a firearm or assault with a firearm.

To decide whether a crime of attempted murder was committed, please refer to the separate instructions that I will give you on that crime.

The People are alleging that the defendant originally intended to aid and abet either brandishing a firearm or assault with a firearm.

The defendant is guilty of attempted murder if you decide that the defendant aided and abetted one of those crimes and that attempted murder was the natural and probable result of one of these crimes. However, you do not need to agree about which of these crimes the defendant aided and abetted.

RT [].

Petitioner contends that this instruction was inconsistent with California law regarding the "natural and probable consequences" doctrine, and that it prejudiced him in violation of his federal constitutional rights.

B.  The Clearly Established Federal Law

Erroneous jury instructions do not support federal habeas relief unless the infirm instruction so infected the entire trial that the resulting conviction violates due process.  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]'").  The challenged instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record overall.  Estelle, 502 U.S. at 72.  Moreover, relief is only available if there is a reasonable

15

1   likelihood that the jury has applied the challenged instruction in a way that violates the

2   Constitution.  Id. at 72–73.

3           C.  The State Court's Ruling

4           This claim was raised on direct appeal.  Because the California Supreme Court denied

5   discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

6   decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

7   501 U.S. 797; Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).  The Court of Appeal ruled in

8   relevant part as follows:

> Under the natural and probable consequences doctrine, "'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.'" (People v. Medina (2009) 46 Cal.4th 913, 920.)
>
> . . .  Diaz complains that, contrary to the natural and probable consequences doctrine, CALCRIM No. 403 "does not require that the [aider and abettor] aided and abetted the actual perpetrator in the target crimes.... [¶] All CALCRIM [No.] 403 requires is that the [aider and abettor] aided or abetted someone in the target crime."
>
> In making this argument, Diaz ignores CALCRIM Nos. 400 and 401, which the jury also received. CALCRIM No. 400 told the jury that "[a] person may be guilty of a crime" if he "aided and abetted a perpetrator who directly committed the crime." CALCRIM No. 401 told the jury that "[t]o prove that a defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime the defendant intended to aid the perpetrator in committing the crime; and [¶] 4. The defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to and does, in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime." (Italics added.)
>
> "In assessing [a] defendant's claim of [instructional] error, we consider the entire charge to the jury and not simply the asserted deficiencies in the challenged instruction." (People v. Lewis (2001) 25 Cal.4th 610, 649.) Taken together, CALCRIM Nos. 400, 401, and 403 informed the jurors that to find Diaz guilty of attempted murder under the natural and probable consequences doctrine, they had to first find he intended to and did, in fact, aid and abet the perpetrator's commission of either brandishing a firearm or assault with a firearm. Thus, Diaz's claim of error in CALCRIM No. 403 is

16

1  without merit.

2  Lodged Doc. 7 at 21-22.

3      D.  Objective Reasonableness Under § 2254(d)

4        This court may not revisit the question whether the challenged jury instruction was proper

5  under California's natural and probable consequences doctrine.  That is a state law issue on which

6  the state courts have the final word.  See Waddingtom v. Sarausad, 555 U.S. 179, 192 n.5 (2009)

7  ("we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-

8  court determinations on state-law questions'") (quoting Estelle, 502 U.S. at 67-68).  Where jury

9  instructions are correct under state law, there can be no due process violation.  Spivey v. Rocha,

10  194 F.3d 971, 976 (1999), cert. denied, 531 U.S. 995 (2000).

11        In rejecting petitioner's claim, the California Court of Appeal did not unreasonably

12  resolve the due process issue.  Indeed, the claim would fail even without reference to AEDPA's

13  exacting standards for relief.  Taken in their entirety, the jury instructions were adequate.  The

14  jury was instructed that it could find petitioner guilty only if it was proved beyond a reasonable

15  doubt that he had aided and abetted a target offense (brandishing a firearm or assault with a

16  firearm), and that the attempted murder was a reasonably foreseeable consequence of the target

17  offense.  This theory of liability does not offend due process.  Moreover, in light of the record as

18  a whole, petitioner has not demonstrated that the instruction rendered the conviction

19  fundamentally unfair.  See Estelle, 502 U.S. at 67, 71-73; see also Solis v. Garcia, 219 F.3d 922,

20  927-28 (9th Cir. 2000) (rejecting argument that jury instructions, including natural and probable

21  consequences instruction, allowed conviction without requisite proof of criminal intent where

22  instructions on the whole reflected that jury was correctly instructed on criminal intent for

23  purposes of aider and abettor liability), cert. denied, 534 U.S. 839 (2001); Spivey, 194 F.3d at 977

24  (rejecting argument that instruction about natural and probable consequences relieved prosecution

25  of its burden of proving requisite mental state).

26      IV.    Claim Four: Failure to Give Unanimity Instruction

27        A.  Petitioner's Allegations

28        Petitioner claims that his rights to due process and a fair trial were violated by the trial

1    court's failure to instruct the jury that their verdict must be unanimous as to the theory of liability.

2    More specifically, he contends that his conviction is invalid because the jury was not required to

3    agree on which predicate act subjected him to aider and abettor liability.

4         B.   The Clearly Established Federal Law

5         "[T]here is no general requirement that the jury reach agreement on the preliminary

6    factual issues which underlie the verdict." Schad v. Arizona, 501 U.S. 624, 632 (1991) (plurality

7    opinion).  Indeed, the Supreme Court has held that the requirement of a unanimous verdict is not

8    itself constitutionally compelled in state criminal trials.  Apodaca v. Oregon, 406 U.S. 404 (1972)

9    (affirming state convictions upon less than unanimous jury verdicts).

10        C.   The State Court's Ruling

11        Because this claim was raised on appeal and the California Supreme Court denied review,

12   the decision of the California Court of Appeals is the decision subject to review here.  Ortiz v.

13   Yates, 704 F.3d at 1034.  The Court of Appeals ruled in relevant part as follows:

14              Diaz contends the trial court erred in failing to give a unanimity
15              instruction because "[t]he prosecution proceeded on a theory that
                [he] was an aider and abettor" and "[t]he aiding and abetting of the
16              offenses could have been premised on any one of two acts under the
                evidence the prosecution presented."  More specifically, Diaz
17              contends the jury could have found he aided and abetted Broadbent
                either by telling him to "go get the gun" or by "lull[ing] the victims
18              into a false sense of security, or divert[ing] their attention from
                [Broadbent] while [he] was preparing his deadly assault."  We find
19              no error.

20              In People v. Jenkins (2000) 22 Cal.4th 900, the defendant insisted
                he was entitled to a unanimity instruction because the jury could
21              have found him guilty of murder either as the direct perpetrator or
                as an aider and abettor.  (Id. at p. 1024.)  The Supreme Court
22              disagreed, noting it was "'settled that as long as each juror is
                convinced beyond a reasonable doubt that [the] defendant is guilty
23              of murder as that offense is defined by statute, it need not decide ...
                unanimously whether [the] defendant was guilty as the aider and
24              abettor or as the direct perpetrator." (Id. at pp. 1024-1025.)
                "[R]el[ying] upon authority indicating that the unanimity
25              instruction is required if there are multiple acts shown that could
                have been charged as separate offenses," the defendant in Jenkins
26              argued that "the circumstances in support of his potential
                accomplice liability—that he was far from the scene when the
27              murder occurred but had aided and abetted in it—were so distinct
                from the circumstances in support of his potential direct liability—
28              that he had been at the scene and had pulled the trigger—as to
                constitute two 'discrete criminal events' requiring the unanimity

                                        18

instruction." (<u>Id.</u> at p. 1025.) Still disagreeing, the Supreme Court stated, "In the present case, defendant's conduct as an aider and abettor or as a direct perpetrator could result only in one criminal act and one charge. Under these circumstances, '[j]urors need not unanimously agree on whether the defendant is an aider and abettor or a principal even when different evidence and facts support each conclusion.'" (<u>Id.</u> at pp. 1025- 1026.)

<u>Jenkins</u> compels a similar result here. If there is no need for jury unanimity on whether a particular defendant was the perpetrator or an aider and abettor of a murder, then why should there be a need for jury unanimity on whether Diaz aided and abetted the attempted murders of Harrison, Watson, and Dorral by telling Broadbent to "go get a gun" or by lulling the victims into a false sense of security while Broadbent did so?

"[C]riminal law is ultimately concerned with ascribing criminal responsibility for discrete events. This is done by defining crimes, for example, first degree murder, and by determining who will be responsible for those crimes, for example, aider and abettors and direct perpetrators. Once the discrete event is identified, for example, the killing of a particular human being, the theory each individual juror uses to conclude the defendant is criminally responsible need not be the same and, indeed, may be contradictory." (<u>People v. Davis</u> (1992) 8 Cal.App.4th 28, 45.)

Here, the discrete criminal event was the attempted murders of Harrison, Watson, and Dorral when Broadbent fired his gun into their car. The jury did not have to agree whether Diaz told Broadbent to "go get a gun," lulled the victims into a false sense of security while Broadbent did so, or both, to find him criminally responsible, as long as each individual juror reached that conclusion of criminal responsibility one way or another. No unanimity instruction was required.

Lodged Doc. 7 at 19-21.

D.  <u>Objective Reasonableness Under § 2254(d)</u>

Nothing in the state court's analysis unreasonably applies clearly established federal law. Because the U.S. Supreme Court has declined to hold that the Constitution requires unanimous verdicts in state criminal trials, <u>Apodaca</u>, <u>supra</u>, and has specifically approved instructions which permit jurors to reach ultimate agreement as to the verdict based on different factual predicates, <u>Shad</u>, <u>supra</u>, this claim is a non-starter under any standard of review.

Petitioner relies on <u>Andres v. United States</u>, 333 U.S. 740 (1948), for the principle that "unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply."  <u>See</u> ECF No. 41 at 26.  Petitioner correctly quotes <u>Andres</u>, <u>id.</u> at 748, but fails to appreciate that its

19

1  holding is limited to federal prosecutions.  See Johnson v. Louisiana, 406 U.S. 356, 369-70 & n.5

2  (1972) (Powell, J., concurring) (discussing differences in application of unanimity principle to

3  federal and state trials).  Apodaca indisputably governs state criminal prosecutions such as

4  petitioner's.

5        Because the unanimous verdict requirement at petitioner's trial was a creature of

6  California law, and was not required by the U.S. Constitution, the state court's adjudication of the

7  unanimity 8issue may not be disturbed here.  Bradshaw v. Richie, 546 U.S. at 76.

8                              CONCLUSION

9        For all the reasons set forth above, IT IS RECOMMENDED that petitioner's application

10  for federal habeas corpus be denied.

11        These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

16  he shall also address whether a certificate of appealability should issue and, if so, why and as to

17  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

18  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.  §

19  2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

20  service of the objections.  The parties are advised that failure to file objections within the

21  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

22  F.2d 1153 (9th Cir. 1991).

23  DATED: December 11, 2014

24                                      _____
                                        ALLISON CLAIRE
25                                      UNITED STATES MAGISTRATE JUDGE

26

27

28

                                      20